THATCHER et al. v. MERRIAM et al.

No. 7689.   Decided January 29, 1952.   (240 P. 2d 266.)

192

See 38 C. J. S., Gifts, sec. 54. Delivery of commercial paper. 7 Am. Jur., Delivery, secs. 31-41.

*Evans, Neslen, Mangum & Morris,* and *Elliott W. Evans,* all of Salt Lake City, for appellants.

*Van Cott, Bagley, Cornwall & McCarthy, W. Q. Van Cott, Grant H. Bagley,* and *Clifford L. Ashton,* all of Salt Lake City, for respondents.

HOYT, District Judge.

In this case the administrator and heirs of Joseph F. Livingston, deceased, sue to have declared void an instrument entitled "Assignment" by which Joseph F. Livingston, in consideration of love and affection purported to give and assign a certain promissory note, together with a deed of trust and a chattel mortgage securing payment of same, to his three sisters, subject to certain terms and conditions set out in the assignment. The instrument of assignment

was delivered by Livingston personally in his lifetime at the home of one of the assignees in the presence of all three of them. The promissory note, deed of trust and a certified copy of the chattel mortgage (the original being filed with the county recorder) remained in Livingston's possession until his death, which occurred nineteen days after he delivered the assignment to the three sisters. The promissory note referred to was for the principal sum of $70,476.92 and was a renewal of a previous note given at the time the deed of trust and chattel mortgage were executed. The whole amount of the renewal note remained owing at the time of Livingston's death. The material parts of the instrument of assignment are as follows:

"Assignment

"In consideration of the love and affection which I hold for the assignees herein, I, Joseph F. Livingston, of Salt Lake City, Salt Lake County, State of Utah, hereby give and assign fifty (50%) per cent of the following described property to my sister, Isabelle Mirriam, of Manti, Utah, twenty-five (25%) per cent of the following described property to my sister, Lillian Robertson, of Fountain Green, Utah, and twenty-five (25%) per cent of the following described property to my sister, Ellen Cook, of Salt Lake City, Utah, subject to the terms and conditions hereinafter set forth, said property being more particularly described as follows:

"One Deed of Trust covering 5,260 acres of real property * * * in which instrument one Loren Dewayne Mirriam conveyed said property in trust to the undersigned, Joseph F. Livingston, to secure the payment of his promissory note made payable to the undersigned, upon which there was a balance due as of November 1st, 1947, of the sum of $70,476.92, which promissory note said Deed of Trust secures. together with said promissory note, which the undersigned hereby assigns to the assignees herein in the percentages herein reserved unto them, provided, however, that the undersigned assignor hereby reserves unto himself during his lifetime all amounts becoming due on the principal of said promissory note and all amounts in excess of the amounts periodically becoming due thereon which the maker thereof under the terms of said note may choose to pay on said principal during the lifetime of the assignor herein; the interest on said principal amount to be paid as said interest shall accrue, to the assignees herein in the percentages hereinabove reserved, i. e. 50% of said interest accruing to be paid to said Isabelle Mirriam, 25% of

said interest accruing to be paid to said Lillian Robertson, and 25% of said interest accruing to be paid to said Ellen Cook, the undersigned hereby authorizing the maker of said note and mortgage to make payment of the amounts herein assigned to the persons named in the percentages herein mentioned; [Then follows a similar recital with reference to a chattel mortgage given to secure the same note.]

"In Witness Whereof, I have hereunto set my hand at Salt Lake City, Utah, this 27th day of March, 1948.

"/s/ Joseph F. Livingston

"Signed in the Presence of:
"/s/ A. S. Anderson.  *  *  *"

The instrument bears a notary's certificate of acknowledgment but the evidence shows that the assignor did not appear before the notary to acknowledge it.

The plaintiffs (appellants herein) contend (1) That by the language of the assignment Joseph F. Livingston retained such dominion and control over the subject matter of the attempted gift, or at least as to the installments of principal, that the assignment was inoperative; (2) That, since the promissory note was not endorsed, and the note, deed of trust and chattel mortgage were retained in Livingston's possession until his death, there was no transfer of ownership of the note or security; (3) That the court erroneously received in evidence a deposition of one of the defendants in violation of the so-called dead man statute, Section 104-49-2 (3) U. C. A. 1943.

With reference to point No. 3, it is claimed by plaintiff that the defendant, Isabelle Merriam, was disqualified to testify by reason of the so-called dead man statute, and that the court erred in receiving in evidence her deposition relative to transactions had with Livingston in ██ his lifetime. In answer to this the defendants assert that there was ample evidence without the testimony of Mrs. Merriam to prove delivery of the assignment to which she testified and that, if the court erred in receiving the deposition, the error was harmless. We think the record shows defendants' contention to be correct as to there being

ample evidence, without the testimony of Isabelle Merriam, to support the finding of the trial court that there was a delivery of the assignment. We therefore hold that the error, if conceded, was insufficient to constitute any ground for reversal, the case having been tried without a jury.

As to plaintiffs' first point, the language of the assignment, including the reservation clause, is free from ambiguity and recites a clear and unequivocal intention on the part of Livingston to make a present gift to his sisters of the interest becoming due on the note in his lifetime and of whatever principal remained owing at the time of his death. Does the fact that the reservation gave him the right to receive principal installments becoming due during his lifetime together with

"all amounts in excess of the amounts periodically becoming due thereon which the maker thereof under the terms of said note may choose to pay on said principal during the lifetime of the assignor"

require the court to defeat the expressed intention of the donor? We think it does not. We do not agree with counsel for plaintiffs that this constituted a reservation of complete dominion over the principal of the gift. It is true that the maker of he note might, at his option, pay the entire principal in the lifetime of the payee and thereby defeat the gift, but that contingency was not within Mr. Livingston's control. He could not force payment prior to maturity of the respective installments and it was not within his power to prolong his sojourn in mortality so as to make certain of receiving the installments of principal as they respectively became due. The further argument of plaintiffs that, insofar as the principal was concerned, it was an attempt to make a gift effective upon death of the donor and was thereby invalid because of the statutes relating to testamentary disposition of property is in our opinion without merit. There was a clearly expressed present gift of such part of the principal as did not become due and was not paid during the lifetime of the donor. The

fact that the maker might, at his option, pay before maturity and before the death of the donor, did not invalidate the gift in case the maker did not so exercise that option. It should also be remembered that the maker of the note was a son of one of the donees and presumably would not be likely to exercise an option so as to defeat the gift to his mother. The language of the assignment cannot be construed as a gift subject to revocation during the lifetime of the donor. The fact that the gift was of installments of principal becoming due after his death did not make it any less binding upon him than if it had been of unpaid installments falling due after a definite designated date or after the happening of any designated contingency which was bound to happen.

It may be appropriate at this point to note that the appellants have not made any point of the fact that Sec. 32 of the uniform negotiable instruments law (Sec. 61-1-33, Utah Code Annotated 1943) provides that an indorsement which purports to transfer to an indorsee a part only of a negotiable instrument or to transfer a negotiable instrument to two or more indorsees severally does not operate as a negotiation of the instrument. Appellants therefore appear to concede that that statute would not prevent the assignment of a part only of the note here involved to the three assignees. If it is incorrect to assume that the appellants have conceded the point, we think the statute does not operate to invalidate the assignment here involved, though it might affect the negotiable character of the note in the hands of the assignees. See *Edgar* v. *Haines*, 109 Ohio St. 159, 141 N. E. 837, 38 A. L. R. 795, and annotation in 63 A. L. R. 499.

Referring now to plaintiffs' second point, that the instrument of assignment was ineffective because of retention of possession of the note and deed of trust by Livingston, it appears that that contention is opposed to the great weight of authority and cannot be reconciled with the views expressed by this court in the

case of *Johnson* v. *Beickey,* 64 Utah 43, 228 P. 189, 191. In that case a note had been pledged by the payee to a bank to secure a debt of the payee. He thereafter executed and delivered to another party, to whom he was indebted, a writing by which he assigned all his right in the note. Before the note was collected by the bank, a garnishment was served upon it, by which a third creditor of the payee attempted to attach his interest in the note. There was a surplus of proceeds of the note, above the amount owing the bank. and the suit was between the garnishing creditor and the assignee named in the assignment. It was contended there, as here, that the assignment by a separate writing without delivery of the instrument was inoperative. This court held otherwise, quoting with approval the following from 8 Cyc. p. 383:

> "*Like an ordinary chose in action, a bill or note may be transferred by assignment* or by mere delivery with the usual incidents of such a transfer, and this rule is not changed by the negotiable instrument law. \* \* \* It may be formal or informal; \* \* \* it may be by a *separate instrument,* or in the absence of a statute to the contrary, by parol." (Italics added.) See to same effect 8 C. J. 383, § 568; 10 C. J. S., Bills and Notes, § 227, p. 719.

That the rule applies in cases of gifts as well as in cases of transfer for a consideration is evident from the authorities:

> "The courts have quite generally held, where there is an assignment or conveyance in writing that is delivered to the donee, that the gift is not defeated because the note itself remains in possession of the donor." 26 A. L. R. at 671, citing *Walker* v. *Crews,* 1882, 73 Ala. 412; and *Burkett* v. *Doty,* 1917, 176 Cal. 89, 167 P. 518, 520.

In the last mentioned case, as in the case at bar, there was an assignment in writing executed by the owner of a note secured by mortgage, the assignment being delivered to the assignee in the lifetime of the assignor but the note and mortgage remaining in possession of the assignor up to the time of her death. The assignment recited that it was not to be recorded until after the death of the donor without

consideration and was intended as a gift to the assignee who was a niece of the assignor. After the death of the assignor, the administrator of her estate refused to deliver the note to the assignee and claimed title to it. The trial court upheld the claim of the administrator but the Supreme Court, by unanimous decision, reversed the judgment saying:

"It must be remembered that, as between donor and donee it is not necessary to the validity of a gift inter vivos, if made by a written instrument transferring the title to the donee, that possession of the thing given be passed to the donee." See also annotation in 63 A. L. R. 537.

"While it has been held, where there is a note, bond, or other written obligation evidencing the debt, that there must be a delivery of the instrument, it is generally held that delivery is not necessary if the assignment is proved by other satisfactory evidence. Thus, where an assignment of a chose in action is made by a separate paper it will be valid, although the written evidence of the chose in action is not delivered". 6 C. J. S., Assignments, § 48, p. 1095, citing *In re Smith*, 191 Mich. 694, 158 N. W. 148; 5 C. J. 903 note 81.

Appellants did not argue in their brief the effect of Sec. 61-1-17 Utah Code Annotated 1943, which is Sec. 16 of the Uniform Negotiable Instruments Act and which provides that:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery in order to be effectual must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument."

A casual reading of that section might seem to prevent the passing of title to a negotiable instrument which is retained in the possession of an assignor, even though he signs and delivers a written assignment of title. But the section should be read in conjunction with Section 191 of the Uniform Act, which is Sec.

61-4-1 of Utah Code Annotated 1943, and which recites that:

" 'Delivery' means transfer of possession, actual or constructive, from one person to another."

In this case, where the payee executed and delivered to the assignees a written assignment of a part interest in the note, but reserved to himself the right to receive installments of principal falling due in his lifetime, he should be considered to be holding the note for himself and the assignees and to have made a constructive delivery to them so as to satisfy the statute.

"There may be a delivery notwithstanding the maker keeps the note in his possession, where it is apparent that he intended to hold it for the benefit and as the agent of the payee". 10 C. J. S., Bills and Notes, § 78, p. 513, note 69; 8 C. J. 205, note 90.

"The delivery of a bill or note to one of two or more payees will operate as a delivery to all." 10 C. J. S., Bills and Notes, § 78, p. 514, note 94, 8 C. J. 210, note 60.

The judgment of the trial court is affirmed, respondents to recover costs.

WOLFE, C. J., and WADE, McDONOUGH, and CROCKETT, JJ., concur.

HENRIOD, Justice, being disqualified, did not participate herein.